# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO MARTINEZ ARIAS, | Case No. 1:14-cv-00764-LJO-BAM (PC) |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTIONS TO AMEND THE SCHEDULING ORDER AS MOOT |
| v. | |
| JOHAL, et al, | (ECF Nos. 48, 50) |
| Defendants. | FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| | (ECF No. 49) |
| | **FOURTEEN (14) DAY DEADLINE** |

**I.     Introduction**

Plaintiff Mario Martinez Arias ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's first amended complaint against Defendant Johal for deliberate indifference to serious medical needs in violation of the Eighth Amendment.

On January 24, 2018, Defendant filed a motion to amend the scheduling order to reopen and reset the current discovery deadline, as well as reset the dispositive motion deadline. (ECF No. 48.) At the time, the dispositive motion deadline was set for February 15, 2018. (ECF No. 40.) Plaintiff's opposition to the motion to amend the scheduling order was due on or before

1

February 19, 2018.

On February 15, 2018, Defendant filed a motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the grounds that: (1) Defendant Johal was not deliberately indifferent to Plaintiff's medical need; and (2) Defendant Johal is entitled to qualified immunity because a reasonable doctor could have believed her conduct in the treatment of Plaintiff was lawful.[1] (ECF No. 49.)

On February 20, 2018, Defendant filed a partial withdrawal of the pending motion to modify the scheduling order, requesting only that in the event the motion for summary judgment was not granted, discovery be re-opened for the limited purpose of taking Plaintiff's deposition. (ECF No. 50.)

Plaintiff filed an opposition to the motion for summary judgment on March 9, 2018, (ECF No. 51), and Defendant filed a reply and objections on March 16, 2018, (ECF Nos. 52, 53). Plaintiff did not separately file any responses to Defendant's motions regarding amendment of the discovery and scheduling order. The motions are deemed submitted. Local Rule 230(l).

For the reasons set forth below, the Court recommends that Defendant Johal's motion for summary judgment be granted, and the pending motions to re-open discovery be denied as moot.

## II. Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

---

[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 49-1.)

2

which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

///

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. The Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.    Discussion**

    **A.    Undisputed Material Facts ("UMF")**[2]

        1.    In December 2012, Plaintiff was an inmate at North Kern State Prison ("NKSP"). (ECF No. 14, First Amended Complaint ("FAC"), pp. 2, 3, 6.)

        2.    On December 4, 2012, Dr. David G. Smith conducted a surgery on Plaintiff's right foot. The surgery involved removal of a pin in the fourth metatarsal and a bone graph [sic]. (FAC, p. 3.)

        3.    The post operation orders included a recommendation by Dr. Smith to "keep dressing to right foot CDI (Clean Dry and Intact) until follow-up appointment in 2 weeks." This recommendation by the orthopedic surgeon who performed the surgery serves as a note to other medical providers who may later treat Plaintiff as part of his follow-up care to not unnecessarily remove the dressings from the surgical wound until the two-week follow-up appointment. (FAC, p. 13; Johal Decl., ¶ 8.)

        4.    The post operation orders also recommended to "keep dress to right foot clean and dry for 2 weeks." Item #3 of the post operation orders stated Plaintiff was to follow-up with a primary care physician ("PCP") within 5 calendar days of the surgery date, for out to medical

---

[2] See Defendant's Statement of Undisputed Facts in Support of Summary Judgment, (ECF No. 49-3); Plaintiff's Response to Defendant's Motion for Summary Judgment, (ECF No. 51); and Defendant's Objections to Plaintiff's Statements Made in Opposition to Summary Judgment, (ECF No. 53). As Defendants argue, Plaintiff did not comply with the rules in preparing his opposition to Defendants' motion for summary judgment, including by failing to provide a separate statement of undisputed facts from his opposition. Local Rule 260(a). As a result, Defendants' statement of undisputed material facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified complaint and opposition to the motion for summary judgment. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence); Johnson v. Meltzer, 134 F.3d 1393, 1399–1400 (9th Cir. 1998) (same, with respect to verified motions). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement and relevant objections are overruled.

1 return ("OTMR") from surgery, so the deadline for that visit would have been sometime before Sunday, December 9, 2012. (FAC, p. 14; Johal Decl., ¶ 8.)

5. On Friday, December 7, 2012, within 3 days of the surgery date, in accordance with the post operation orders, Defendant saw Plaintiff in the Administrative Segregation Unit ("ASU"). Defendant was on duty as a PCP. (FAC, p. 20; Johal Decl., ¶ 9.)

6. Prior to Defendant's visit with Plaintiff that day, she would have reviewed the post operation orders that were in his chart, including those shown in the records attached as pages 13 and 14 to the FAC. (FAC, pp. 13–14; Johal Decl., ¶ 9.)

7. As part of Plaintiff's December 7, 2012 follow-up visit to the ASU, Defendant performed a physical exam and assessment that included taking Plaintiff's temperature, which was in the normal range of 97.6. Plaintiff did not have a fever. (FAC, p. 20; Johal Decl., ¶ 10.)

8. Defendant also took and noted Plaintiff's pulse, blood pressure, respiratory rate, height, weight, and body mass index. She also performed a general physical assessment of Plaintiff's head, ears, nose, throat, neck, cardio, pulmonary, abdomen, musculoskeletal system, neurological system, and psychiatric state. (FAC, p. 20; Johal Decl., ¶ 10.)

9. Defendant also examined Plaintiff's right foot as part of the December 7, 2012 visit. Plaintiff did complain of pain of moderate intensity in his right foot but that is normal three days after a bone grafting surgery. (FAC, p. 20; Johal Decl., ¶ 11.)

10. Defendant observed Plaintiff's right foot was wrapped in dressings with a partial splint present. Plaintiff was able to move his toes, and Defendant observed no discoloration or swelling of toes. The nerve exam and pulse of the right foot performed by Defendant also was normal. (FAC, p. 20; Johal Decl., ¶ 11.)

11. Defendant's examination on December 7, 2012 of Plaintiff's right foot did not indicate any signs of a post-operation infection. (FAC, p. 20; Johal Decl., ¶ 11.)

12. Based on her examination of Plaintiff and review of the post-surgery orders, Defendant also determined an assessment plan for Plaintiff that included instructing him to keep the wound dressing clean and dry. (FAC, p. 20; Johal Decl., ¶ 12.)

///

13. Defendant also reviewed with Plaintiff his prescribed medication, which was Tylenol#3 and Indomethacin for pain and Omeprazole for prevention of peptic ulcers. (FAC, p. 20; Johal Decl., ¶ 12.)

14. Based on the findings of Defendant's examination of Plaintiff, there were no symptoms that indicated the need to prescribe him any sort of antibiotic medication for any type of infection. (FAC, p. 20; Johal Decl., ¶ 12.)

15. Based on the findings of Defendant's examination, it would have been inappropriate to have prescribed Plaintiff antibiotics as part of the December 7, 2012, visit because there were no signs of infection per the physical exam, so antibiotics were not necessary. (FAC, p. 20; Johal Decl., ¶ 12.)

16. Based on Defendant's examination and assessment of Plaintiff as part of his December 7, 2012 visit, she did not remove and change the dressings or clean the surgical wound to his right foot because it was recommended by orthopedic surgeon, Dr. Smith, in the post-surgery orders to keep the dressing to the right foot Clean Dry and Intact (CDI) until the two-week follow-up appointment. And, also based on Defendant's physical exam and assessment of Plaintiff, there was no indication of any infection to his right foot. So Defendant saw no need to go against Dr. Smith's recommendation by removing and changing the dressings or cleaning Plaintiff's surgical wound. FAC, pp. 13, 14, 20; Johal Decl., ¶ 13.)

17. Defendant states that she exercised her professional judgment at all times while treating Plaintiff. (Johal Decl., ¶ 20.)

18. Defendant states that she did not purposefully ignore, delay, or fail to respond to Plaintiff's possible medical needs. Defendant states that her course of treatment was chosen in a good faith effort to alleviate Plaintiff's pain and discomfort. (Johal Decl., ¶ 21.)

19. Defendant states that at no time was she aware of any excessive risk to Plaintiff's health and safety. (Johal Decl., ¶ 22.)

20. Defendant states that she did not disregard any excessive risk to Plaintiff's health. (Johal Decl., ¶ 23.)

///

21. Based on Defendant's examination of Plaintiff on December 7, 2012, Defendant states that she provided careful, compassionate, and appropriate care to him on that date. (Johal Decl., ¶ 25.)

22. Based on Defendant's education, training, and experience, she believes that the medical treatment provided to Plaintiff on December 7, 2012 was medically appropriate and within the standard of care of a doctor acting as a primary care physician and treating a patient after a surgery like the one performed here. (Johal Decl., ¶ 26.)

**B.    Analysis**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In her motion for summary judgment, Defendant contends that in her professional medical opinion, she provided the appropriate treatment for Plaintiff during his December 7, 2012 examination. In addition, Defendant argues that she is entitled to qualified immunity because a reasonable doctor could have believed that Defendant's conduct was lawful. (ECF No. 49.) In opposition, Plaintiff argues that Defendant denied him medical care by failing to change his visibly soiled wound dressing and prescribe him antibiotics, thus ignoring an excessive risk that Plaintiff would get an infection. (ECF No. 51.)

7

### 1. Deliberate Indifference

Plaintiff's argument that Defendant Johal denied him medical care is unavailing. The undisputed evidence shows that Defendant provided Plaintiff with treatment that was, in her professional judgment, appropriate under the circumstances. Plaintiff was examined by Defendant on December 7, 2012, which was within the timeframe recommended for follow up by the orthopedic surgeon. (UMF No. 5.) Defendant noted no signs of infection during her examination, and noted that Plaintiff had a temperature, pain level, nerve exam, and pulse all in normal ranges, and that Plaintiff had no discoloration or swelling of the toes and Plaintiff was able to move his toes. (UMF Nos. 7, 9–11.) It was within Defendant's professional judgment to direct Plaintiff to keep the wound dressing clean and dry, and to keep the dressing intact until Plaintiff's two-week follow up appointment with the orthopedic surgeon. (UMF Nos. 12, 16.)

Plaintiff argues that he requested to be seen at an "emergency no wait visit" due to the visible soiled dressing on his right foot, and that Defendant's refusal to change the dressing and failure to prescribe antibiotics constitutes a denial of treatment. However, Defendant testified that in her medical opinion, antibiotics were not necessary at the time of Plaintiff's December 7, 2012 examination, as there were no symptoms indicating the need to prescribe him any sort of antibiotic medication for any type of infection. (UMF Nos. 14–16.) Though Plaintiff cites to various exhibits in support of his argument, only Plaintiff's complaint and opposition to the motion for summary judgment indicate that there were any visible signs of infection. In fact, the Health Care Services Request Form submitted by Plaintiff on December 5, 2012 indicates only that Plaintiff's pain medication was not working, his foot hurt a lot, and that he was advised by nurses at the hospital to let the doctor at his institution know if there was a change in pain. (FAC, ECF No. 14, p. 20.) While Plaintiff does indicate that he is getting swelling that was not present before, Plaintiff makes no mention of any visible blood or other soiling of his wound dressing. The remaining documents Plaintiff cites all post-date Plaintiff's December 21, 2012 follow up with the orthopedic surgeon, and there is no other admissible evidence supporting Plaintiff's assertion that there were visible signs of an infection at the time of his December 7, 2012 examination by Defendant.

Plaintiff's theory that an infection would have been prevented, or would have been less severe, if Defendant had changed the dressing on his wound at his December 7, 2012 examination is purely speculative here, where he provides no evidence for a reasonable fact finder to consider other than his own unsupported conjecture.

Under Federal Rule of Evidence 701, Plaintiff, a layperson, is not qualified to offer medical opinions or conclusions based on his symptoms or the course of his medical treatment. Plaintiff's opinion that he had an urgent need for treatment or that his outcome would have been more favorable if his dressing had been changed on December 7 as opposed to December 21, is not admissible. Only an expert witness with specialized knowledge may determine whether Defendant's conduct was within the appropriate standard of care, whether Defendant's actions or failure to act were the cause of any harm, or if delays in Plaintiff's treatment led to further harm.

Plaintiff presents only his own unsupported assertions that Defendant acted unreasonably in failing to change his dressing or prescribe antibiotics. At most, Plaintiff's declarations raise a question as to whether there was a lapse in Defendant's professional judgment. In other words, there may be an issue of fact as to whether Defendant acted negligently. However, well-established precedent is clear that any perceived lapse of Defendant's professional judgment in this context would not equate to an Eighth Amendment violation. See Toguchi, 391 F.3d at 1057 ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.") (citation omitted).

This evidence, construed in favor of Plaintiff, is insufficient to raise a genuine dispute for trial as to whether Defendant "disregarded an excessive risk to inmate health and safety" as is required to show deliberate indifference. See Toguchi, 391 F.3d 1057. The Court concludes that there is no genuine issue of material fact preventing summary judgment in favor of Defendant concerning the failure to change Plaintiff's dressing or prescribe antibiotics on December 7, 2012. Therefore, summary judgment should be granted as to Defendant.

### 2. Qualified Immunity

Defendant also asserts that the Court should grant summary judgment on the basis of qualified immunity. However, the Court finds that this argument need not be reached, based

upon the above determination regarding the undisputed facts in this case.

**IV.     Conclusion and Recommendations**

For the reasons explained above, IT IS HEREBY RECOMMENDED that Defendant Johal's motion for summary judgment, (ECF No. 49), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 5, 2018**          /s/ *Barbara A. McAuliffe*
                                        UNITED STATES MAGISTRATE JUDGE